UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| CASSANDRA DORENE DAPSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Nos. 2:18-CV-223 |
| ) | 2:17-CR-017 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM OPINION**

Before the Court is Cassandra Dorene Dapson's ("Petitioner's") *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 229].[1] The United States has responded in opposition [Doc. 4]. Petitioner did not file a reply, and the time for doing so has passed. *See* Rule 5(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts; *see also* [Doc. 3]. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 229] will be **DENIED**.

   **I.    BACKGROUND**

In April 2017, Petitioner and six co-defendants were charged in a 21-count superseding indictment pertaining to conspiracy and distribution of methamphetamine [Crim. Doc. 15]. Petitioner was named in two counts. *See id.*

---

[1] Document numbers not otherwise specified refer to the civil docket.

On July 6, 2017, Petitioner entered into a plea agreement with the government. [Crim. Doc. 70]. Petitioner agreed to plead guilty to one count of conspiracy to distribute and possession with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance. [*See id.*] The plea agreement was signed by Petitioner and attorney Jerry J. Fabus, Jr.

In her plea agreement, Petitioner acknowledged that in early 2015, the Federal Bureau of Investigation, (FBI) along with other law enforcement began an investigation into an evolving methamphetamine distribution organization that distributed multiple kilogram quantities of high purity methamphetamine, a schedule II controlled substance, monthly in the Jefferson, Hamblen and Greene Counties areas of the Eastern District of Tennessee. This organization obtained the methamphetamine from trans-national criminal organizations and other methamphetamine suppliers located inside and outside the State of Tennessee.

In August of 2016, one of the conspiracy's local leaders was arrested and incarcerated in Hamblen County, Tennessee. After her arrest, the distributors that she had previously supplied had to obtain additional methamphetamine suppliers in order to supply their own customers. Petitioner admits that her role in the conspiracy involved distributing methamphetamine that a co-defendant supplied her.

On March 8, 2017, Defendant was following a Ford truck in a 2004 Volkswagen Passat and both vehicles were stopped for speeding. Defendant admits she was found to be in possession of drug paraphernalia. Upon stopping Petitioner's car, the officer located behind the glove compartment, a box with several bags containing a crystal-like substance

which resembled methamphetamine. Also found in the vehicle were digital scales and a glass pipe. Petitioner was interviewed about the bags containing the crystal-like substance, and she admitted she gave the substance to someone else to put in the car. The baggies and substance were weighed at the White Pine Police office on digital scales and the total weight of the crystal-like substance came to a total weight of 6.65 ounces. Petitioner gave consent to a search of her residence where officers found several items of drug paraphernalia and several pills identified as Schedule IV narcotics. Petitioner had $882 cash on her person. Interviews with Petitioner led the Government to conclude that her involvement began about eight months prior to her March 2017 arrest, or around July 2016.

Petitioner admitted that she sold methamphetamine supplied to her by co-defendant and stated that she obtained an ounce of methamphetamine on a weekly basis from co-defendant for approximately eight months. Petitioner further admitted that her co-defendant told her names of other individuals who owed him money and that she collected drug debts for him.

For the purposes of the plea agreement, the parties agreed that Petitioner should be held individually responsible for distributing or possessing with the intent to distribute at least 150 grams but less than 500 grams of actual methamphetamine. [*Id*. at 2-4; *see also* Crim. Doc. 96, pp. 5-7]. Petitioner also acknowledged that "the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553." [*Id*. at 5].

The Court conducted a change of plea hearing on July 17, 2017. Although there is no transcript of that hearing in the record, the minutes reflect that the Court confirmed that Petitioner indeed wished to plead guilty. [Crim. Doc. 76]. The Court also advised Petitioner of her constitutional rights and the penalties of the offense charged; arraigned Petitioner and specifically advised her of her rights under Rule 11, F.R.C.P.; questioned Petitioner regarding her physical and mental condition; granted Petitioner's motion to change her plea and allowed her to plead guilty to Count 1 of the Superseding Indictment; and set a sentencing date where the United States would move to dismiss the remaining counts against Petitioner. [*Id.*].

The presentence investigation report ("PSR") calculated a total offense level of 29 and criminal history category of IV, resulting in a guideline range of 121 to 151 months. [Crim. Doc. 96, ¶¶ 61-62]. The statutorily required minimum sentence was 10 years. [*Id.*]. The PSR also noted that, but for Petitioner's plea agreement, she could have been exposed to a 20 year minimum term of incarceration if the United States had chosen to file for an enhancement pursuant to 21 U.S.C. § 851 based on one of Petitioner's prior drug convictions. [*Id.* at ¶ 65].

The government filed a notice of no objections to the PSR. [Crim. Doc. 97]. The government filed a sealed motion for downward departure and sentencing memorandum requesting the Court grant a two-level reduction from the advisory guideline range pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), reducing Petitioner's guideline range to 100 to 125 months. [Crim. Doc. 107, p. 4].

4

Petitioner, through counsel, also filed a notice of no objections to the PSR. [Crim. Doc. 99]. Petitioner, through counsel, filed a sentencing memorandum, requesting the Court grant the government's motion for downward departure and sentence Petitioner at the bottom of the amended guideline range, 100 months. [Crim. Doc. 109].

On November 13, 2017, the Court sentenced Petitioner to a total of 100 months' imprisonment, with such term of imprisonment to run concurrently with Jefferson County General Sessions Court Docket Number 249413. [Crim. Doc. 121, p. 2]. Petitioner did not file a direct appeal, but on December 20, 2018, she filed this § 2255 motion.

## II. STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct her judgment of conviction and sentence if she claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his

ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). In order to obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, she must set forth facts which entitle her to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that she is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d

at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. ANALYSIS

As an initial matter, Petitioner raises two claims in this § 2255 motion: 1) ineffective assistance of counsel for failing to argue that she should have been charged with a mixture of methamphetamine instead of actual methamphetamine, and 2) ineffective assistance of counsel for failing to file an appeal. [Doc. 1].

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for h[er] defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the

circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what she "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### A. Claim 1 – Failure to Argue for Mixture of Methamphetamine

Petitioner claims that her attorney's failure to argue against the purity of methamphetamine designation affected her sentencing calculations. [Doc. 1]. This claim fails at *Strickland's* second step. Petitioner "cannot satisfy the prejudice prong in the absence of any statement that [s]he is actually innocent, or would have gone to trial if [her] attorney's performance had been different." *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998). Petitioner makes neither claim. She does not allege she is innocent, nor does she claim that she would have decided to proceed to trial but for counsel's allegedly deficient performance.

Even if Petitioner's attorney would have objected to the purity of the methamphetamine in the Plea Agreement, Petitioner has not shown that the result would have been different. Petitioner argues that two judges in the Northern District of Iowa

8

recently announced that they disagree with the marijuana equivalency called for in the sentencing guidelines when imposing sentences in cases involving actual methamphetamine and ice. [Doc. 1, p. 14]. Petitioner further argues that while she was charged with 50 grams or more of "actual methamphetamine," she should have been sentenced under a mixture of methamphetamine based on her culpability, making her guideline range less than 51-71 months of incarceration. [*Id.*]. Petitioner has not set forth any binding legal authority on the Court or factual support to show that had she made this objection at sentencing, that she would have prevailed.

Further, as discussed above, Petitioner affirmed at the change of plea hearing that she wished to plead guilty, and that her attorney had adequately covered the plea agreement with her. The Plea Agreement clearly states that "the conspiracy involved distribution or possession with the intent to distribute at least 50 grams of *actual methamphetamine*." [Crim. Doc. 70, ¶ 3(d)] (emphasis added). Petitioner also confirmed her understanding that her sentence would be determined *by the Court* after the Court had reviewed and considered the PSR. As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner's unsupported allegations are directly contradicted by the record and are not credited. Petitioner thus cannot bear her burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

9

Case 2:18-cv-00223-RLJ-CRW   Document 8   Filed 12/11/20   Page 9 of 11   PageID #: 44

To the extent that Petitioner is asserting that her counsel was ineffective in failing to raise this issue at sentencing, Petitioner has not shown that she was prejudiced by this failure. Furthermore, Petitioner has not shown that her counsel was ineffective in failing to file an appeal raising this issue, as Petitioner has not alleged that she asked counsel to file an appeal or would have filed an appeal absent counsel's mis-advice. Accordingly, Petitioner has not shown that counsel was ineffective.

Accordingly, Petitioner's Claim 1 will be **DENIED**.

### B. Claim 2 – Failure to Appeal

Petitioner claims that her counsel was ineffective for failing to file an appeal, however, she provides no factual support for this claim. In fact, Petitioner does not discuss this claim in her attached memorandum of support [*See* Doc. 1, pp. 14-15], and merely states, "Defendant's Attorney failed to file an Appeal in the time allowed violating defendant's due process rights" in the supporting facts section of her motion. [*Id.* at 5]. As Petitioner has not provided specific facts to support her conclusory allegations, the Court can reject this contention as insufficient to sustain the motion. *See Ushery v. United States*, No. 20-5292, 2020 U.S. App. LEXIS 21840, at *3–4 (6th Cir. July 14, 2020).

Furthermore, Petitioner has not shown that her counsel was ineffective in failing to file an appeal, as Petitioner has not alleged that she asked counsel to file an appeal or would have filed an appeal absent counsel's mis-advice. Accordingly, Petitioner has not shown that counsel was ineffective. *Strickland*, 466 U.S. at 690

### IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 229] will be **DENIED** and **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, as jurists of reason would not debate the Court's findings as to any of Petitioner's claims. Because Petitioner has failed to make such a showing, a COA **SHALL NOT ISSUE**.

The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed in forma pauperis on appeal. *See* Fed. R. App. P. 24(a)(3)(A).

A separate judgment will enter.

    **IT IS SO ORDERED.**

    ENTER:

    s/ Leon Jordan
    United States District Judge